**INSURANCE MANAGEMENT OF WASH-INGTON, INC., Appellant,**

**v.**

**ENO & HOWARD PLUMBING COR-PORATION, Appellee.**

**No. 9371.**

District of Columbia Court of Appeals.

Argued Oct. 8, 1975.

Decided Dec. 8, 1975.

James T. Sharkey, Washington, D. C., for appellant.

James Brent Clarke, Jr., Washington, D. C., with whom James R. Michal, Washington, D. C., was on the brief, for appellee.

Before HARRIS and MACK, Associate Judges, and McARDLE, Associate Judge, Superior Court of the District of Columbia.*

MACK, Associate Judge:

Appellant Insurance Management of Washington, Inc., a general insurance agency, appeals from a judgment entered in the Superior Court awarding appellee Eno & Howard Plumbing Corporation recovery of a $4,560 insurance premium paid by appellee for a worthless surety bond procured by appellant's agents. The trial court, finding that the agents acted within the scope of their apparent authority, held appellant liable both in contract and in tort. We affirm.

Appellee Eno & Howard, a corporation engaged in business as a mechanical and plumbing contractor, entered into a contract with Stauffer Construction Company to perform certain work as a subcontractor. As a condition of this contract, appellee's president, Charles P. Howard, was requested to secure a payment and performance bond. Howard first contacted his regular insurance agent who refused to provide a bond because he felt that Eno & Howard was overextended in its work on hand. Howard then contacted Ralph B. Brown, a vice-president and director of appellant Insurance Management, upon the recommendation of another contractor who had been bonded by appellant in the past.

Brown first met Howard at appellee's office, at which time Brown stated that he would try to get a bond for Eno & Howard. In return, Howard said that he would consider giving Insurance Management his future insurance business. Subsequently, Philip Schwartz, an employee of appellant's Maryland affiliate, visited appellee's office to gather the financial information needed to procure a bond.

Initially, Brown had difficulty obtaining a bond and told Howard in telephone conversations that two sources had refused to insure appellee. Brown then called Howard, stating that he had obtained a bond and that he would need a check to pick up the bond since Eno & Howard had not previously done business with Insurance Management. Pursuant to Brown's instructions, Howard delivered to Brown appellee's check in the amount of $4,560 payable to Allied Bonding Company. Howard did not make any inquiries concerning the transaction, although the premium was two percent of the contract price rather than the usual one percent and the payee was not the appellant Insurance Management.

After receiving the check, Brown, with the assistance of Schwartz, delivered the check to Allied and obtained a bond issued by Citizens Casualty Company of New York. The bond was subsequently rejected by appellee's general contractor because Citizens Casualty had been suspended from doing business in New York.[1]

After attempts by Insurance Management to recover the payment proved unsuccessful, Eno & Howard instituted this action alleging *inter alia* that appellant, acting through its authorized agents, had breached its contract with appellee to provide a suitable surety bond, and in the alternative, that appellant had acted negligently in failing to exercise care in the supervision of its agents. At trial appellant contended that it was not liable for the acts of its agents because both Brown and Schwartz had acted outside the scope of their authority by obtaining a bond from Citizens Casualty through Allied. Appellant admitted that Brown was authorized to procure surety bonds. However, John Matternas, president of Insurance Management, testified that his employees had been instructed to place bonds only through those sources with which Insurance Man-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11-707(a).

1. Citizens Casualty Insurance Company of New York has since been dissolved and was being liquidated at the time of trial.

agement had agency contracts and that Citizens Casualty was not one of those sources. In addition, Citizens Casualty Company was not admitted to do business in the District of Columbia, and neither Brown, Schwartz, nor the appellant corporation had a license entitling them to deal with non-admitted companies.

The trial court determined that although Brown and Schwartz exceeded their actual authority, appellant had placed them in positions of apparent authority, and that Howard "had every logical and reasonable right to rely on Brown and Schwartz to have the authority which they purported to possess." In addition, the court found that Brown and Schwartz had acted within the scope of their employment and for their employer's benefit.

Appellant's principle contention on appeal is that Howard had a duty to ascertain the extent of the agents' authority and therefore the trial court erred in finding that he reasonably relied on the agents to have the authority which they purported to possess.

■ Apparent authority arises when a principal places an agent "in a position which causes a third person to reasonably believe the principal had consented to the exercise of authority the agent purports to hold. This falls short of an overt, affirmative representation by a principal . . . ." *Drazin v. Jack Pry, Incorporated,* D.C.Mun.App., 154 A.2d 553, 554 (1959). *See also Jack Pry, Incorporated v. Drazin,* D.C.Mun.App., 173 A.2d 222, 223 (1961); *Livingston v. Fuhrman,* D.C. Mun.App., 37 A.2d 747, 748 (1944); *Tel-Ads, Inc. v. Trans-Lux Playhouse, Inc.,* 232 F.Supp. 198, 201–02 (D.D.C.1964). The evidence in this case supports the finding that the agents had been placed in positions of apparent authority by the appellant: Brown acted within the scope of

his actual authority in undertaking to procure a bond for appellee; Schwartz was authorized by appellant to examine appellee's books; Brown exhibited a business card identifying him as an agent of appellant; Brown was contacted at appellant's offices. In fact, appellant does not seriously contest the trial court's conclusion that it had placed Brown and Schwartz in positions of apparent authority to act on its behalf. Rather, appellant argues that because the transaction between Howard and appellant's agents was unusual and peculiar, Howard could not reasonably believe, without further inquiry, that the agents were authorized to procure a bond through Allied Bonding Company.

■ The general rule is that third persons may rely on the apparent authority of an insurance agent and need not inquire as to secret limitations imposed by the principal unless circumstances put them on notice of limitations on the agent's authority. *See* 3 G. Couch, INSURANCE § 26:75 (2d ed. 1960); *Russell v. Eckert,* 195 So.2d 617, 621–22 (Fla.Ct.App.1967). *See also Tel-Ads, Inc. v. Trans-Lux Playhouse, Inc., supra,* 232 F.Supp. at 202. Appellant lists the following as circumstances which should have put Howard on notice that the acts of Brown and Schwartz were unauthorized: the check was to be made payable to Allied Bonding Company rather than Insurance Management; the premium was higher than that usually paid; and Howard had been told by Brown that Citizens Casualty was not the best source.[2]

■ We do not find any of these circumstances particularly unusual or peculiar. It is common knowledge that insurance agents or brokers procure insurance for their clients from insurance companies. The fact that Howard was told to make a check payable directly to a bonding company rather than to the agency is not a sign

---

2. Howard testified at trial that Brown had told him that Citizens Casualty was "not of the best source." There is a dispute as to when this statement was made. However, the testimony indicates that Howard received this information when Brown delivered the bond to him, after the check had been given to Allied.

that the transaction was at all unusual. Furthermore, in light of Howard's previous difficulty obtaining a bond, he could reasonably believe that he would only be able to purchase a bond at a higher premium and from a company which was not the "best source."[3] In any event, the trial court's factual determination that Howard reasonably relied on the appearance of authority is not, in our view, clearly erroneous.[4] Thus, we affirm the decision holding appellant liable in contract[5] for its agents' failure to procure a suitable surety bond.

█ Appellant also contests the finding of liability in tort, arguing that its agents' acts were not performed within the scope of their employment or for appellant's benefit. As was stated in *Lancaster v. Canuel*, D.C.App., 193 A.2d 555, 559 (1963):

> An employer, whether corporate or individual, is not liable for an employee's act unless performed within the scope of employment and for the employer's benefit. An act is not within such scope if

done for the employee's purposes only. To be within the course of the employer's business, the conduct of the employee must be of the same general nature as that authorized or incidental to the conduct authorized. [Citations omitted.]

Under the circumstances, the trial court was justified in finding that the agents' conduct was of the same general nature as that for which they were authorized and that they acted for their employer's benefit. Brown and Schwartz were authorized to take steps necessary to procure a payment and performance bond for appellee; and their actions in obtaining a bond were motivated at least in part by the hope of obtaining all of appellee's insurance business for the appellant. The trial court did not err in holding appellant liable in tort as well as in contract.

From our examination of the record, we conclude that appellant's other assignments of error are without merit.[6]

*Affirmed.*

---

3. Appellant emphasizes the fact that Howard was experienced in purchasing payment and performance bonds. The extent of Howard's knowledge about the insurance business is disputed; however, we do not find that the circumstances here were such as to clearly put even a knowledgeable insurance applicant on notice that the transaction was unauthorized.

4. An appellate court will not disturb a finding of fact made by a trial court unless clearly erroneous. *Drazin v. Jack Pry, Incorporated, supra.*

5. As suggested in our prior opinions, this court approves the rule that an insurance broker who undertakes to procure insurance for another and through fault or neglect fails to

do so is liable for resulting damages either in contract or in tort. *See Adkins & Ainley, Inc. v. Busada*, D.C.App., 270 A.2d 135, 137 n. 1 (1970); *Shea v. Jackson*, D.C.App., 245 A.2d 120, 121 n. 4 (1968).

6. Appellant contends that this case must be reversed because the trial court's order contains no discussion of appellant's defense of contributory negligence. That defense is based on Howard's failure to make inquiries in the face of "unusual" circumstances. Although the trial court did not expressly address itself to the question of contributory negligence, the finding that Howard reasonably relied on the agents to have the authority which they purported to possess disposes of the issue.