873 F.2d 408
 277 U.S.App.D.C. 195
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
AMERICAN SECURITY BANK, Plaintiff-Appellee,
v.
Daniel W. MYERS, 2nd, et al., Defendants-Appellants.
 No. 87-7086.
 United States Court of Appeals, District of Columbia Circuit.
 May 9, 1989.
 
 Before WALD, Chief Judge, SILBERMAN, Circuit Judge, and BARRINGTON D. PARKER, District Judge.*
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was considered on appeal from the United States District Court for the District of Columbia. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that the judgment of the district court be affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 Appellants Michael D. Matteo, Mitchell J. Rabil, Daniel W. Myers, David F. Norcross, and James H. Landgraf (the "New Jersey partners") appeal from a judgment of the district court. The trial court held that the New Jersey partners were liable on a promissory note executed by William A. Sullivan, another member of the partnership. Finding no error, we affirm the judgment of the court below.
 
 
 5
 This dispute stems from the creation of a partnership agreement establishing a law firm known as Sullivan, Matteo, Rabil & Norcross ("SMR & N"). Sullivan was to be the sole resident partner at the firm's office in Washington, D.C., and therefore was entrusted with the day-to-day management of the firm. SMR & N established a bank account at Riggs National Bank in Washington, and the status of that account was monitored by the New Jersey partners. Unbeknownst to his colleagues, however, Sullivan also established a $20,000 line of credit with appellee American Security Bank ("American Security" or "the Bank"); he obtained the credit by executing a promissory note on behalf of the partnership. Sullivan diverted the entire $20,000 to his personal use, and the note subsequently went into default.
 
 
 6
 The liability of the New Jersey partners on the note executed by Sullivan is governed by the Uniform Partnership Act, D.C.Code Secs. 41-101 et seq. The Act provides that "[e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." D.C.Code Sec. 41-108(a). The Act also provides that its construction shall be guided by the law of agency. See D.C.Code Sec. 41-103(c). Two questions are presented here. First, did Sullivan have apparent authority to borrow money in the name of the partnership? Second, did American Security Bank have knowledge that Sullivan was not in fact authorized to borrow money on this particular occasion?
 
 
 7
 For an agent to have apparent authority, "it is essential that the principal have put the agent in a position where the power exercised would normally be within the reasonable scope of authority. Whether an agent has apparent authority is a question of fact to be proven by the party asserting it." Management Partnership, Inc. v. Crumlin, 423 A.2d 939, 941 (D.C.App.1980). See also Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corporation, 348 A.2d 310, 312 (D.C.App.1975). The trial court found that Sullivan had apparent authority to borrow money on behalf of the partnership, see American Security Bank, N.A. v. Sullivan, 659 F.Supp. 436, 439 (D.D.C.1987), and we may disturb that factual determination only if we deem it clearly erroneous. In our view, the district court's conclusion is amply supported by the record. The partnership agreement, which provided that no partner could borrow money on behalf of the partnership without his colleagues' consent "except in the course of the partnership business," implicitly recognized that a partner could borrow money to further the interests of the firm. The New Jersey partners placed Sullivan in control of the firm's office and gave him full authority to manage its day-to-day affairs. As the district court's opinion stated, "the New Jersey defendants, by their conduct, surrounded Sullivan with the indicia of authority and held him out to the Bank and others as managing partner of the firm's office in Washington with authority to transact business for the firm." 659 F.Supp. at 440.
 
 
 8
 The second question is whether American Security Bank had knowledge that Sullivan had no actual authority to borrow money on this particular occasion. The statute provides that "[a] person has 'knowledge' of a fact within the meaning of this chapter ... when he has actual knowledge thereof, ... [or] when he has knowledge of such other facts as in the circumstances show bad faith." D.C.Code Sec. 41-102(a). The appellants do not contend that American Security Bank had actual knowledge of Sullivan's lack of authority to establish this line of credit. We also agree with the district court that the Bank did not "have knowledge of any other facts which demonstrated bad faith on its part in dealing with SMR & N through Sullivan." 659 F.Supp. at 440.
 
 
 9
 The appellants also contend that the Bank negligently failed to follow its own internal procedures in processing the loan application, and that this negligence precludes the Bank from enforcing the promissory note against the New Jersey defendants. As an initial matter, we think it clear that American Security's deviation from its own procedures, even if it were established, would not by itself constitute negligence. More importantly, the Uniform Partnership Act simply does not embody a negligence standard. When a partner has the apparent authority to act on behalf of the partnership, his acts bind the partnership unless the person with whom he deals has actual knowledge of his lack of authority, or "has knowledge of such other facts as in the circumstances show bad faith." D.C.Code Sec. 41-102(a). Though the term "bad faith" is not defined, it would suggest in this context some form of willful ignorance, a deliberate shielding of oneself from information which would confirm an initial impression that the agent's deeds are unauthorized. Whatever the precise contours of "bad faith" under the statute, it plainly does not encompass negligence. Such a reading would effectively transform the statutory requirement of "actual knowledge" into a "constructive knowledge" (or "should have known") standard, a standard which the drafters of the Act evidently took some pains to avoid.
 
 
 10
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. Sec. 292(a). Judge Parker heard oral argument but took no part in the final disposition of this case due to ill health